**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION and GE MEDICAL SYSTEMS, a Division of GENERAL ELECTRIC COMPANY, | Civil Action No. 05-cv-4867 (PGS) |
| Plaintiffs, | |
| v. | **OPINION** |
| CLIFTON RADIOLOGY ASSOCIATES, LLC, MICHAEL BUCKLEY, VICTOR MELO, ORESTES SANCHEZ, BINOD SINHA, and COREY WEINER, | |
| Defendants. | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion by Plaintiffs General Electric Capital Corporation and GE Medical Systems, a Division of General Electric Company (collectively referred to as "GE" or "Plaintiffs"), for a default judgment on its claims against Defendants Clifton Radiology Associates, LLC ("Clifton"), Michael Buckley, Victor Melo, Orestes Sanchez, Binod Sinha, and Corey Weiner (collectively referred to as "Defendants"), for failure to appear or otherwise respond to plaintiffs' Complaint of October 11, 2005. Subsequent to the filing of the motion, plaintiffs settled with all defendants, with the exception of Defendant Melo. Plaintiffs request this Court enter default judgment against Defendant Melo. For the reasons set forth below, plaintiffs' motion will be granted.

I.

As alleged in the Complaint and the Affidavit of Clinton Cagle, a Workout Litigation Analyst for plaintiffs, submitted in support of the motion for default judgment, on or about September 18, 2003, Clifton entered into a Master Lease Agreement ("MLA") with GE Capital, pursuant to which GE Capital agreed to lease to Clifton certain equipment to be set forth on schedules. The MLA provided that a default will occur if Clifton should fail to make any payment to GE Capital when due and fails to cure such default within ten days or Clifton should breach any other obligation under the MLA and fails to cure same within thirty days of written notice from GE Capital, or if any material adverse change occurs in Clifton's financial condition or business operations. In the event of a default under the MLA, GE is permitted, at its discretion to (i) declare the aggregate rents payable under any and all of the schedules immediately due and payable; (ii) declare all other amounts due GE Capital immediately due and payable; (iii) collect from Clifton, on all monies due but unpaid for more than ten days, a late charge of five cents per dollar on, and in addition to, the amount of all such monies; and (iv) take possession of the equipment subject to the MLA and corresponding schedules and remove same from its existing location without notice to or consent of Clifton.

On September 18, 2003, Clifton entered into Schedule Nos. 1 and 2 for the lease of one Senographe 800T Mammography System and one Lunar BMD Prodigy Full Bone Densitometer, respectively. Each schedule called for sixty monthly payments as set forth in the schedules. On September 19, 2003, Clifton entered into Schedule No. 3 for the lease of one pre-owned Logiq 7 Ultrasound. Clifton agreed to make sixty monthly payment to GE Capital for the equipment. On September 30, 2003, the parties entered Schedule Nos. 4 and 5 for the lease of one Kodak Dryview 8700 Laser Imager and one Toshiba Asteion 4 Slice, respectively. Each schedule called for sixty monthly payments as set forth in the schedules. GE Capital also secured three guaranties from the

individual defendants including Defendant Victor Melo. Melo executed the guaranty on September 19, 2003, pursuant to which he unconditionally and personally guaranteed to pay to or perform for GE Capital any and all obligations and liabilities of Clifton under the Agreements.

Clifton failed to make payments to GE Capital required under the MLA and Schedule Nos. 1 through 5. On August 23, 2005, GE Capital served Notice of Default on Clifton and demanded that Clifton cure its default under the MLA and Schedule Nos. 1 through 5 and make payment of past due sums to GE Capital no later than September 2, 2005, or GE Capital would accelerate the balance due under the MLA and Schedule Nos. 1 through 5 and declare the entire indebtedness thereunder to be immediately due and payable. In the event Clifton did not cure its default, GE Capital also demanded the return of the equipment. Despite the written demand, Clifton failed to make payment to GE Capital sufficient to cure the default under the MLA and respective schedules leading GE Capital to declare the entire sums due under the MLA and Schedule Nos. 1 through 5 to be immediately due and owing to GE Capital. Including late charges, taxes and any service and maintenance that may be due, at the time this motion was filed there was due and owing to plaintiffs, $31,906.094 under Schedule No. 1, $32,761.82 under Schedule No. 2, $53,646.92 under Schedule No. 3, $31,282.54 under Schedule No. 4, and $306,689.55 under Schedule No. 5. Thus, the total amount due and owing to plaintiffs at the time the motion for default judgment was filed, excluding attorneys' fees and costs, was $456,287.77.[1] As indicated above, subsequent to the filing of the

---

[1] Clifton and GE Capital also entered into support components for the equipment set forth in Schedule Nos. 1 and 3 whereby upon the expiration of the applicable warranty period, GE Medical would provide support to Clifton for its use of the equipment for a monthly fee. The parties also entered into a Universal Agreement to provide equipment support. The amounts due and owing as a result of these three agreements total $8,518.56. While the documents submitted in support of the motion for default judgment are not clear on this issue, it appears as if plaintiffs are not attempting to obtain judgment against the guarantors for the breach of these agreements. The motion requests $456,287.77, plus attorneys' fees and costs against each defendants and $8,518.56 against Clifton.

motion, plaintiffs settled with all defendants, with the exception of Defendant Melo, whereby GE consented to the assignment of the Lease and equipment from Clifton to an entity known as MAEIS Radiology, P.L.L.C. ("MAEIS"). MAEIS agreed to assume Clifton's obligations and liabilities to GE Capital under the Lease and to pay for the costs of removing and transferring the equipment to MAEIS's premises. In exchange therefor, GE Capital agreed to move the rental payments due for the months of August through October 2006 to the end of the Lease term, in effect extending the original maturity date of the Lease by three (3) additional months. As security for MAEIS' payment obligations to GE Capital under the assigned Lease, the settling defendants (a) agreed to each be jointly and severally liable to GE Capital in the amount of (i) $436,770.54, which sum represents the total indebtedness due under the Lease and (ii) $62,349.84, which sum represents the total amount of attorney's fees and costs incurred by GE Capital through January 2007; (b) agreed to pay the aforementioned amounts to GE Capital in the event of a future default by MAEIS under the Lease; (c) guaranteed to pay to or perform for plaintiffs all obligations and liabilities of MAEIS under the assigned Agreements; and (d) executed a consent judgment in favor of GE Capital in the amount of $499,120.38, plus interest from August 1, 2006, which consent judgment would be held in escrow by GE Capital and not be filed with the Court, upon application, unless and until a default has occurred under the Agreement and notice of the default has been provided to the settling defendants and MAEIS.

II.

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n. 9 (3d Cir. 1990) ("When a defendant fails to

appear..., the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Directv, Inc. v. Asher*, 2006 WL 680533 (D.N.J. 2006) (citing *Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure* § 2688, at 58-59, 63 (3d ed.1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Asher*, 2006 WL 680533 (citing *Wright, Miller, & Kane*, § 2688, at 63); *Directv, Inc. v. Croce*, 332 F. Supp 2d 715, 717 (D.N.J. 2004)). The Court must also "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *In re Industrial Diamonds*, 119 F.Supp.2d at 420 (citing *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

III.

Before granting a default judgment, the Court is obliged to consider three factors: (1) whether plaintiffs will be prejudiced if default is not granted, (2) whether defendants have a meritorious defense, and (3) whether defendants' delay was the result of culpable misconduct. *Asher*, 2006 WL 680533; *Carpenters Health and Welfare Fund v. Naglak Design*, 1995 WL 20848 *2 (E.D. Pa. 1995)

(citing *Emasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987); *Hritz*, 732 F.2d 1178, 1180). However, these factors are more applicable to situations where the defaulting party has made an appearance, particularly where the party wishes to reopen a previously entered default. *Getty Petroleum Marketing, Inc. v. Saini*, 2006 WL 1344685 *2 (D.N.J. 2006).

In any event, since defendants have not made an appearance, this Court is "not in a position then to determine whether [defendants have] a meritorious defense or whether any delay is the result of culpable misconduct." *Carpenters Health*, 1995 WL 20848 *2 (E.D. Pa. 1995). In the same vein, because plaintiffs have "no other means of vindicating its claim against" defendants, plaintiffs will be prejudiced if the default is not granted. *Asher*, 2006 WL 680533 *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default"). Accordingly, the factors recommend entry of the default judgment.

Default judgment is inappropriate, even where defendants have failed to appear, unless the plaintiff has provided well pleaded facts sufficient to establish a claim. *Directv v. DeCroce*, 332 F.Supp.2d 715 (D.N.J. 2004), rev'd on other grounds, 431 F.3d 162 (3d Cir. 2005). Because a defaulting party does not admit conclusions of law, the Court must make an independent inquiry into "whether the unchallenged facts constitute a legitimate cause of action." *Id.* (denying default for failure to state a claim) (quoting *Wright, Miller & Kane*, § 2688, at 63).

Because "[c]onclusions drawn with respect to the legal effect of any agreement"-including whether a contract has been breached-constitute questions of law, this Court must make an independent determination as to whether defendants breached the contract. See *ATACS Corp. v. Trans World Comm., Inc.*, 155 F.3d 659, 665 (3d Cir. 1998) (citing *Linder v. Inhalation Therapy Servs., Inc.*, 834 F.2d 306, 310 (3d Cir. 1987)); *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1176 (2d

Cir. 1995) (noting that "the conclusion that the contract has been breached" constitutes a "legal conclusion [ ] to be drawn from factual findings").

The record indicates that plaintiffs effectuated service of process on Defendant Melo. Default was entered by the Clerk. Furthermore, the record indicates that this defendant was served with notice of the instant motion for default judgment and with supporting documents on or about February 2, 2007, via regular mail. Thus, the Court is satisfied that Defendant Melo had ample notice of the Complaint and of the instant motion for default judgment and chose not to respond.

Accordingly, the Court will treat the allegations as to liability in the Complaint as true and admitted by Defendant Melo. Further weighing in favor of granting default judgment on liability is the public's interest in ensuring that a business entity will face repercussions when it breaches a contract and fails to address same when hailed into court. Plaintiffs continue to be prejudiced by delay in resolution of this case. It cannot collect money owed under the Agreements without a judgment. Defendant Melo has failed to respond to and/or oppose the motion and, as stated above, the grounds for default judgment are clearly established. There is no evidence that defendant's default is attributable to good faith, mistake or excusable neglect. There is no evidence from which the Court can infer that it would have to vacate a default judgment entered against Defendant Melo in this matter. For these reasons, a default judgment against Defendant Melo on liability is warranted.

IV.

The only allegations in a plaintiff's complaint that are not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Under Rule 55(b)(2) a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of

damages." However, if the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary and a district court may enter final judgment. Fed. R. Civ. P. 55(b)(1); *KPS Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003); *Comdyne I*, 908 F.2d at 1149. A claim for damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." *KPS Assocs.*, 318 F.3d at 19. "Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." *Id.* at 19-20 (internal quotations omitted).

Even when faced with claims for uncertain damages a district court may still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the "'amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" *Id.* at 21 (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983)).

Here, plaintiffs are entitled to compensatory damages. Plaintiffs have substantiated that Defendant Melo owes a certain sum using the Affidavit of Clinton Cagle and a subsequent letter brief concerning the settlement entered by plaintiffs and all defendants with the exception of Defendant Melo, thus a Rule 55(b)(2) hearing is not necessary. As explained by Mr. Cagle, the total amount owed to plaintiffs under the Agreements is $464,806.33. From this amount, $8,518.56, the amounts owed under the support components and Universal Agreement, is subtracted, for which, as stated above, plaintiffs appear to not hold the individual guarantors liable. Since the motion was filed, GE Capital has received $222,546.62 towards the outstanding amount due and owing under the Lease pursuant to the settlement agreement, reducing the indebtedness under the Guaranty to $355,316.70. Further, plaintiffs are entitled to attorneys' fees and costs in the total amount of

$63,796.54. Plaintiffs' counsel has provided an Affidavit in support of this request.

V.

Defendant Melo is liable for breach of the Agreements, and default judgment shall be entered against him in the total amount of $419,113.24, with any future payments received by GE Capital from MAEIS reducing the outstanding obligation of Defendant Melo under the Guaranty.

June 18, 2007

PETER G. SHERIDAN, U.S.D.J.